### BRODIE *v.* FITZGERALD.

Decided February 20, 1892.

*Practice in Supreme Court—Advancing causes.*

> A cause involving the collection of public revenue will not be advanced out of its order on the docket when it does not appear that any department of the government will be embarrassed by delay.
>
> [The opinion defines the practice in advancing causes upon the docket.]

APPEAL from *Pulaski* Chancery Court.

DAVID W. CARROLL, Chancellor.

*Charles P. Roberts* for appellant.

*Blackwood & Williams* for appellee.

COCKRILL, C. J. The case comes up on a motion to ad-vance it on the docket for hearing out of its regular order, upon the suggestion that the public interest is involved. The motion sets forth the following state of facts : " Alexander Hager devised to Edward Fitzgerald, as bishop of the Cath-olic church, certain real property in the city of Little Rock, Arkansas, the rents and profits of which were to be used in maintaining a hospital in said city. Soon thereafter Ed-ward Fitzgerald obtained from the Pulaski chancery court an injunction restraining John Brodie, as county clerk, from

extending the taxes against said property, which consists of
and is rented for store-houses and dwellings."

According to the immemorial practice of this court, no
case can be taken up out of its order on the calendar, even
by consent, where private or local interests only are con-
cerned, unless the statute has otherwise specified. It is in-
cumbent upon the court to see to it that the unnecessary
advancement of causes out of their order does no injustice
to other litigants, the hearing of whose causes has already
been delayed by the crowded state of the docket. *Vaught*
v. *Green,* 51 Ark., 378. The fact that a case is of public
importance or interest, or that the interest of many persons
in many localities depend upon it, does not of itself entitle
the parties to have it heard out of its order. To make it a
question of public interest, within the meaning of the prac-
tice which gives preference to such cases, the administration
of public affairs—that is, the government—must in some
way be involved. And then only the party representing the
governmental interest can be heard to raise the question.
In such a case the practice is to refuse to advance the cause
unless it is made to appear that the unsettled condition of
the question will embarrass the operation of the State gov-
ernment or of some one of the political subdivisions of the
State. It is accordingly the practice to refuse to advance a
contest about a county seat—which is always a mat-
ter of great public interest in the county where it arises—
unless the controversy has left the question of the location
of the seat of justice in doubt and makes it probable that
confusion will arise in the administration of the law.

In the annexation of new territory to a city, the assump-
tion of jurisdiction by the city over the new territory before
the right is finally settled might create confusion in all de-
partments of the city government (*Black* v. *Brinkley,* 54
Ark., 372), and the case is advanced to prevent it.

Contested election cases have been advanced upon the
theory that they involve the due administration of the law,

because the people have the right to have the law enforced by those whom they have elected.

The only other class of cases to which the practice has been applied is such as involve the public revenue. Numerous cases under that head have been advanced. But the reason upon which the practice is based limits it to cases in which it is made to appear that delay would materially embarrass the operation of the State or of a county or municipal government. The present case does not present that state of things. For aught that appears, the property involved is a small part of the taxable property of the county and city, and the question presented affects the taxation of that property alone. It is not shown then that any department of the government will be in any wise embarrassed by the delay.

The motion is denied.